Gary Lee OWENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–03–00469–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 22, 2004.

Lana Gordon, Brookline, MA, for appellants.

Keisha L. Smith, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant challenges his conviction for driving while intoxicated on two grounds: (1) the evidence is legally and factually insufficient to support the verdict; and (2) the trial court improperly denied his motion to suppress expert testimony on retrograde extrapolation. We reverse and remand for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 26, 2002, appellant, Gary Lee Owens, was arrested for driving while intoxicated. Allison Matsu, the complainant, and Robert Turner arrived at Agora, a coffee shop/wine bar, at approximately 6:30 to 6:45 on the evening of August 26th. Robert agreed to stay with the car and wait for a parking space to become available while Allison went into Agora to order coffee. Agora's parking lot is shared by an art gallery and a few apartments located above the art gallery. Appellant resided in one of those apartments.

While Robert was waiting for a space to become available, appellant, while driving a van, collided with Allison's car in the parking lot. It is unclear whether the van was already in a parking space, and appellant was simply moving the van, or whether appellant was pulling into the parking space when the collision occurred. Robert notified Allison of the accident, and when she came outside, both Robert and Allison saw appellant get out of the van. At this point, Allison confronted appellant about the damage to her fender, but appellant denied hitting her car. Allison attempted to get insurance information from appellant, but appellant refused and went to his

apartment located above the art gallery. When appellant refused to provide his insurance information, Allison called the police. Allison testified at trial she smelled a strong odor of alcohol coming from appellant and he was stumbling and slurring his speech. Robert testified to the same version of facts; however, on cross-examination, Robert admitted his memory was "refreshed" after a conversation with Allison a few days before trial.

One of appellant's roommates, Bruce Moffett, testified that around 6:30 to 7:00 p.m., appellant returned to the apartment. Moffett saw appellant periodically throughout the day, but he never saw appellant drinking alcohol and he did not have any reason to believe appellant had been drinking prior to 6:30 or 7:00 p.m. After appellant returned home, he was involved in an altercation with another individual in the apartment. Appellant called the police to report a domestic violence claim, and, according to Moffett, began drinking immediately after the incident.

Officer Nguyen responded to Allison's call, arriving at approximately 8:30 p.m., over one and a half hours after the accident. Appellant, believing Officer Nguyen was responding to his domestic violence call, met Nguyen in the parking lot. Nguyen testified appellant was obviously intoxicated because he could smell a strong odor of alcohol on appellant from three feet away, appellant was staggering, had bloodshot eyes, and was slurring his speech. At 8:35, Officer Dumas arrived and administered field sobriety tests to appellant. When appellant performed poorly on both tests, Dumas arrested him for driving while intoxicated.

Appellant was transported to the city jail intoxilyzer room, where appellant agreed to give a voluntary breath sample. The first sample was taken at 10:08 p.m., which showed appellant's blood alcohol content ("BAC") to be 0.108. The second sample, taken two minutes later, showed appellant's BAC to be 0.103. Both samples were taken nearly three and one half hours after the accident.

Appellant filed a motion to suppress, asking the court to exclude any expert testimony using retrograde extrapolation based on the intoxilyzer results.[1] The trial court denied the motion, and despite counsel's urging reconsideration several times during trial, the court stood firmly on its ruling. Appellant was convicted by a jury of driving while intoxicated and sentenced by the court to forty-five years' confinement. Appellant brings two points of error on appeal: (1) the evidence is factually or legally insufficient to support the conviction; and (2) the trial court erred in denying the motion to suppress.

## Legal Sufficiency of the Evidence

■ By his first point of error, appellant challenges the legal sufficiency of the evidence to support the element of intoxication. We address appellant's legal sufficiency challenge first because if we determine the evidence is legally insufficient to support appellant's conviction, we must render a judgment of acquittal. See Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim.App.1996); Rios v. State, 4 S.W.3d 400, 404–05 (Tex.App.-Houston [1st Dist.] 1999), pet. dism'd, improvidently granted, 122 S.W.3d 194 (Tex.Crim.App.2003). In reviewing the legal sufficiency of the evidence, we consider all the evidence in a

---

1. Retrograde extrapolation is the computation back in time of a person's blood-alcohol level. Mata v. State, 46 S.W.3d 902, 908–09 (Tex. Crim.App.2001) (en banc). In a DWI case, it is used to determine the blood-alcohol level at the time of driving based on test results obtained at a later time. Id.

light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We consider all of the evidence admitted, both properly and improperly admitted, as well as direct and circumstantial evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001); *Muttoni v. State*, 25 S.W.3d 300, 308 (Tex.App.-Austin 2000, no pet.). Additionally, when the trial court's charge authorizes conviction on several different theories, the verdict will be upheld if the evidence is sufficient on any one of the theories. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App.2003).

Appellant claims the evidence is legally insufficient to prove he was intoxicated at the time of the accident. To establish the offense of driving while intoxicated, the State must prove the defendant was intoxicated while operating a motor vehicle in a public place. TEX. PEN.CODE ANN. § 49.04 (Vernon 2003). "Intoxication" is defined as: "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, . . . or (B) having an alcohol concentration of 0.08 or more."[2] TEX. PEN.CODE ANN. § 49.01(2). Viewing the evidence in a light most favorable to the verdict, Allison Matsu, Robert Turner, and Rickey Viser, the State's expert witness, testified appellant was intoxicated at the time of the accident. Matsu and Turner both testified they witnessed appellant stumbling, slurring his speech, and that he smelled strongly of alcohol. Both Matsu and Turner testified that, in their opinion, appellant was intoxicated. Additionally, Viser's testimony presented evidence that appellant's BAC was over

the legal limit of 0.08 at the time of driving. Accordingly, after reviewing all of the evidence, including inadmissible evidence, we conclude there was sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt appellant was intoxicated, under either the "impairment" or "per se" theory. Appellant's first point of error as to legal sufficiency is overruled.

## MOTION TO EXCLUDE EXPERT TESTIMONY

In his second issue, appellant contends the trial court erred in admitting Viser's expert testimony. We review the trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex.Crim.App.2002). The trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990). Thus, we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement, given the evidence presented and the requirements of Rule 702 of the Texas Rules of Evidence. *Sexton*, 93 S.W.3d at 99.

The trial court is guided by Texas Rule of Evidence 702 in determining whether expert testimony should be admitted. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App.1992). Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. The trial court serves as "gatekeeper," admitting evidence only if it

---

**2.** Subsection (A) is referred to as the "impairment" theory, and subsection (B) is referred to as the "per se" theory.

is sufficiently reliable and relevant to assist the jury. *Jordan v. State,* 928 S.W.2d 550, 554–55 (Tex.Crim.App.1996).

## A. *Mata v. State*

The leading case concerning the admission of expert testimony applying the science of retrograde extrapolation is *Mata v. State,* 46 S.W.3d 902 (Tex.Crim.App.2001) (en banc). The *Mata* court held the trial court erred in admitting retrograde extrapolation testimony because the State failed to prove by clear and convincing evidence the expert testimony was reliable. *Id.* at 917. Germane to the court's decision was the fact that the expert provided many inconsistent answers, relied on one single intoxilyzer test conducted over two hours after the alleged incident, and could not identify "one single personal characteristic of Mata—he did not know whether Mata had eaten anything that night and if so, how much; how much Mata had had to drink; what Mata had been drinking; when Mata's last drink was [consumed]; the length of Mata's drinking spree; or even Mata's weight." *Id.*

■ The Court of Criminal Appeals held, however, that retrograde extrapolation can be reliable if certain factors are known. *Id.* at 916. The court's primary consideration is whether the expert can apply the science and explain it with clarity. *Id.* The expert must be able to recognize some of the difficulties inherent in retrograde extrapolation and be able to consistently apply the science. *Id.* In determining reliability, the court should also consider (a) the length of time between the offense and the tests administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert. *Id.* Relevant personal characteristics may include the person's

weight and gender, typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day in question, what the person drank, the duration of the drinking spree, time of last drink, how much and what food the person had consumed before, during or after the drinking spree. *Id.*

■ The expert does not need to know every single personal fact about the defendant in order for the extrapolation to be reliable. *Id.* at 916–17. Otherwise, "no valid extrapolation could ever occur without the defendant's cooperation, since a number of facts known only to the defendant are essential to the process." *Id.* at 916. Thus, this court must employ a balancing test between the factors to determine if the trial court abused its discretion. *Id.* at 917. The Court of Criminal Appeals set forth the following guidelines when balancing the factors:

> If the State had more than one test, each test a reasonable length of time apart, and the first test [was] conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors. In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert.

*Id.* at 916–17.

## B. *Application of Mata*

The intoxilyzer test was administered to appellant approximately three and a half

hours after the offense, and appellant was not taken into custody for over an hour and a half after the offense. This delay impairs the ability of an expert witness to make an accurate and reliable retrograde extrapolation. Additionally, because appellant's BAC tests were administered only two minutes apart, this case is most comparable to a single test conducted some time after the offense, thus requiring the expert to have knowledge of many personal characteristics and behaviors of the defendant in order for the retrograde extrapolation to be reliable.

Rickey Viser testified as an expert on behalf of the State. Viser, a criminalist and technical supervisor for the Houston Police Department Crime Laboratory, is responsible for supervising the breath test program for the Texas Department of Public Safety. He is a certified breath test operator and has participated in many additional training programs. He testified that after reviewing all of the maintenance records and the records from the tests actually administered to appellant, the equipment was in good working order.

Viser was able to ascertain certain known factors about appellant from the arrest report prepared by Officer Dumas. Those known factors include the following: appellant (1) was approximately five feet six inches in height; (2) weighed approximately one hundred and fifty pounds; (3) was born on November 26, 1950; (4) is male; and (4) had eaten lasagna as his last meal at approximately 3:00 p.m. During the motion to suppress, the State posed a hypothetical to Viser using appellant's known facts, the actual results of the breath tests, and the assumptions that the person's last drink was consumed at approximately 7:00 p.m. and he was driving at 7:00 p.m. Viser opined that the person's blood alcohol content at 7:00 p.m. would range from 0.13 to 0.14. The State posed

a second hypothetical on the same facts, except the person's last drink was at 6:00 and he was driving at 6:40. Based on this scenario, Viser testified the BAC would be 0.15 to 0.16 at 6:40 p.m.

When asked how he calculated the BAC, Viser testified he extrapolated the BAC based on the average person's ability to absorb alcohol at an average of 0.02 per hour, and then gave a range. He testified food was not a factor in this scenario because it would have been digested by 5:00 p.m. and would not have affected the absorption rate. He further explained that

by the test being at 10:10, roughly, 10:10 p.m., and the person seeing—the last time he was driving was at 6:40, that's roughly three hours, roughly; so, a person would lose one drink per hour, which is 0.03, so it would be three times 0.02 added to the 0.103, which would give you about 0.16, add those two numbers together. That's why I incorporated a range of 0.15 to 0.16.

Viser apparently did not find the additional half hour to be important, did not explain how he derived the range of 0.15 to 0.16, and did not indicate whether that range took into account the personal characteristics of the hypothetical person. Additionally, none of Viser's hypotheticals during the motion to suppress accounted for the hour and a half time period when appellant was not in custody following the accident. Indeed, the significant factors Viser relied upon were the assumptions provided by the State, assumptions not supported by any facts. The only evidence in the record appellant may have been drinking before the accident came from Allison's and Robert's testimony. There is simply no other evidence appellant was drinking, how much he had to drink, the type of alcohol consumed before the accident, or the time of his last drink.

On cross-examination during the motion to suppress, Viser demonstrated his knowledge of the additional factors which may affect the results of retrograde extrapolation. Viser admitted a key consideration is the difference in time between the time of offense and time the test is administered. He recognized more than one breath test is necessary to determine whether or not a person is absorbing or eliminating, and without tests conducted over a greater span of time, many variables could affect the results. Viser testified that when determining a distribution curve, two tests would be significant, but that more than one test would not make a difference in conducting a retrograde extrapolation analysis. However, according to Viser, two tests would be relevant when factoring in an individual's unique characteristics to determine his BAC at the time of the accident. It is unclear from Viser's own testimony whether one test or two tests were necessary to obtain accurate and reliable results in conducting retrograde extrapolation. In fact, when asked why two tests were performed in this case, he testified that it was to ensure the equipment was functioning properly and the results were accurate. Viser did not agree that the number of tests given and the length of time between each test was an important consideration.[3]

Additional factors, not known by Viser, which would influence his analysis include: drinking patterns, alcohol tolerance, how much the appellant had to drink, what appellant drank, when he started drinking, how long he had been drinking, when the last drink was consumed, and how much he had to eat. Appellant's counsel asked Vis-

er whether he could form an opinion as to a person's BAC, knowing only that person's height, weight, gender and the type of food consumed seven hours earlier. Viser responded that he could not extrapolate without additional information, such as, time of last drink, time of the test, and results of the test. Thus, according to Viser, he could not give an accurate extrapolation without knowledge of the time of the last drink, an unknown factor here.

In view of the significant amount of time that passed between the time of the offense and time the breath test was administered—especially given the testimony that appellant was drinking for an hour and a half between the accident and the time he was taken into custody—under *Mata*, Viser was required to have knowledge of many personal factors of appellant. Applying the factors set forth in *Mata*, (1) there was a considerable amount of time that elapsed between the offense and the time of the breath tests; (2) two tests were administered, but these tests were so close in time as to prohibit any meaningful analysis regarding absorption or elimination; and (3) Viser knew only a few of appellant's personal characteristics, none of which included the timing and amount of appellant's consumption of alcohol. Additionally, Viser did not explain how his lack of information regarding appellant's activities after the offense, but before being taken into custody—a time Moffett testified appellant was drinking—affected the extrapolation. The State was unable to show Viser's testimony was reliable because Viser did not clearly explain the science of retrograde extrapolation, and

3. One of the indisputable concepts in retrograde extrapolation is that multiple tests-the more time between the tests the better-allow the expert to determine whether a person is absorbing or eliminating alcohol, and thereby more accurately and reliably determine that person's BAC at the time of the offense. *Mata*, 46 S.W.3d at 916. The absence of multiple tests, widely separated in time, removed a critical factor from the retrograde extrapolation analysis testimony introduced at trial.

Viser did not know many relevant, important personal characteristics of appellant. Accordingly, we hold the trial court abused its discretion in admitting Viser's testimony based on retrograde extrapolation.

## C. Harm Analysis

■ Next, we must determine whether the trial court's error was harmful pursuant to Texas Rule of Appellate Procedure 44.2. The State argues any error was harmless because the charge submitted by the trial court contained both the "per se" and "impairment" theories of intoxication;[4] thus, the jury's verdict could be upheld on either theory. However, following the Court of Criminal Appeal's recent holding in *Bagheri v. State*, we find this argument without merit. *Bagheri*, 119 S.W.3d 755 (Tex.Crim.App.2003).

In *Bagheri*, the defendant had been convicted of driving while intoxicated after the trial court erroneously admitted retrograde extrapolation evidence. *Id.* at 760. On appeal, the State conceded the expert testimony did not meet the standards set forth in *Mata*, but argued the error was harmless because the jury could have convicted the defendant under either the "per se" or the "impairment" theory, as submitted to the jury by a general charge. *Id.* The *Bagheri* court rejected the State's contention, holding the "issue was whether the erroneously admitted testimony might have prejudiced the jury's consideration of the other evidence or substantially affected their deliberations." *Id.* at 763. Thus, the issue is not whether the jury charge sets out a valid and proper means of committing the offense of DWI or whether there

was sufficient evidence to prove one of the alleged means by which appellant committed the offense; rather, this court must ask whether the extrapolation evidence offered by the State's expert to prove "per se" intoxication might have seriously affected the jury's ability to determine if appellant was intoxicated, whether by "impairment" or "per se." *Id.* at 762 n. 5. Therefore, we must employ the standard Rule 44.2 harm analysis and evaluate the harm flowing from the erroneous admission of the retrograde extrapolation evidence. Tex.R.App. P. 44.2; *Bagheri*, 119 S.W.3d at 763.

■ Here, the trial court's erroneous admission of retrograde extrapolation evidence did not rise to the level of constitutional error; thus, the error must be disregarded unless appellant's substantial rights are affected. Tex.R.App. P. 44.2(b); *Bagheri*, 119 S.W.3d at 762–63. Substantial rights are not affected "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). This court must consider the entire record, including testimony, evidence, voir dire, closing arguments, and jury instructions to determine whether the jury was affected. *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex.Crim. App.2002). We should also consider "whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert." *Bagheri*, 119

4. The charge submitted to the jury defined "intoxication" as:
   (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those

   substances, or any other substance into the body; or
   (B) having an alcohol concentration of 0.08 or more.
   Subsection (A) is referred to as the "impairment" theory, and subsection (B) is referred to as the "per se" theory.

S.W.3d at 763. Additional factors include the nature of the evidence supporting the verdict, the character of the alleged error, and how it may be considered in connection with other evidence in the case. *Id.*

As in *Bagheri*, the jury's general verdict in this case makes it impossible to determine which theory the jury relied upon. *Bagheri*, 119 S.W.3d at 763. While relevant, this fact alone is not determinative; rather, the issue becomes whether the erroneous admission of the retrograde extrapolation evidence may have prejudiced the jury's consideration or substantially affected their deliberations. *Id.* Therefore, we turn to the testimony and evidence presented at trial.

The testimony challenged on appeal was elicited from an expert. The prosecutor relied heavily on Viser's credentials and urged the jury to rely on Viser's expert opinion because he was a trained professional who "deserved" credibility. Additionally, during voir dire, the prosecutor alluded to the fact that trial testimony would explain why a blood alcohol test might be higher or lower at the time the test is administered as compared to the time of driving. The prosecutor also stated during voir dire that the Texas Department of Public Safety determined use of an Intoxilyzer "is the most reasonable, accurate instrument out there to determine somebody's blood alcohol content on the basis of their breath. They have determined-not me, not I-the DPS has determined that that is the most accurate instrument out there."

Viser testified at length during trial about the validity of retrograde extrapolation and with certainty that appellant was legally intoxicated, even though Viser could not clearly explain the science of retrograde extrapolation. During direct examination, Viser opined appellant "was twice—almost twice the legal limit." The

State also emphasized Viser's conclusion during re-direct examination by asking the following question: "And in any of the hypotheticals that either I gave you or the defense counsel gave you, were any of your calculations that the defendant would have been below the legal limit of .08 at the time of driving?" Viser responded that all of the hypotheticals that he "was able to use retrograde extrapolation on" rendered results above the legal limit. The prosecutor again stressed this fact during closing argument by stating that "[i]n every single hypothetical with Rick Viser, [appellant] was over that legal limit. Every one." The State not only emphasized the erroneously admitted evidence, but also emphasized Viser's credentials.

Additionally, the extrapolation evidence in this case was not cumulative. There was no other "scientifically reliable" evidence presented in this case which would have indicated appellant was intoxicated. There was testimony presented by Allison Matsu that appellant smelled strongly of alcohol, could not walk straight, and that he was "stumbling all over the place." Matsu testified that, in her lay opinion, appellant was intoxicated and could not operate a vehicle safely. Robert Turner testified that appellant appeared to be intoxicated at the time of the offense based on his observations that appellant smelled of alcohol, had bloodshot eyes, slurred his speech, shuffled from side to side, and was very hostile. Turner's testimony, however, was impeached on cross-examination when he admitted some of his answers changed a few days before trial after a conversation with Allison "jogged" his memory. Additionally, appellant's roommate, Bruce Moffett, testified that shortly after the accident appellant began drinking, but he did not have any reason to believe appellant had been drinking prior to the accident. The prosecution also presented testimony

**312**

of two officers present at the scene of the accident approximately one and a half hours later. Both officers testified appellant showed signs of intoxication; however, the defense offered a reasonable explanation for appellant's alleged · intoxication when the officers arrived.

The jury was free to assess the credibility of the witnesses in determining whether appellant was legally intoxicated; however, the jury was likely swayed by the scientifically precise conclusions provided by Viser. We cannot say the introduction of the retrograde extrapolation evidence had but a slight effect or did not influence the jury's verdict. *See Bagheri,* 119 S.W.3d at 764. Therefore, appellant's second issue is sustained.

### CONCLUSION

After examining the entire record, we conclude the record contains legally sufficient evidence to support the verdict; however, we cannot say with fair assurance the jury was not influenced by the trial court's erroneous admission of the unreliable retrograde extrapolation evidence; therefore, we must reverse the judgment of the trial court and remand for a new trial. Given our disposition of appellant's second issue, we will not address appellant's factual sufficiency challenge.