

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00072-CR

---

PATRICIA A. HARVEY
APPELLANT

V.

THE STATE OF TEXAS
STATE

----------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Patricia A. Harvey of driving while intoxicated, and the trial court sentenced her to ninety days' confinement. In three points, Harvey contends that the trial court abused its discretion by admitting expert testimony about the amount of prescription medication in her system when the

---

[1]*See* Tex. R. App. P. 47.4.

officer stopped her and by overruling her objection to the State's comments on her post-arrest silence. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Cameron Mendoza was traveling southbound on Farm to Market Road 730 towards Azle, Texas when he saw a white Chevrolet truck with its hazard lights on. Mendoza called 911 on his cell phone to report that he saw the truck weaving in and out of its lane of traffic into oncoming traffic and almost hit a motorcyclist at an intersection.

Officer Thomas Berrettini of the Azle Police Department responded to Mendoza's 911 call and saw the white Chevrolet truck drive through a red traffic light and stop in the middle of the intersection. Officer Berrettini approached the vehicle and asked the driver, Harvey, to roll down the driver's side window. When Harvey struggled to roll down the vehicle's window, Officer Berrettini asked her to exit the truck.

Officer Chance Kidd arrived at the scene to assist Officer Berrettini. Officer Kidd moved Harvey's vehicle out of the intersection and into a nearby parking lot. The two officers administered three standard field sobriety tests on Harvey. Harvey failed the first test and was unable to complete the other two tests due to her lack of balance. Both officers noticed that Harvey had an "extremely" difficult time standing and walking, and each officer found it necessary to assist Harvey so that she did not fall as she attempted the tests.

2

The officers arrested Harvey and took her to the Azle police station. At the station, Harvey appeared confused and unable to understand Officer Berrettini's questions. He believed that Harvey was not in control of her mental and physical faculties and that her intoxication was due to drugs, not alcohol. Harvey denied having ingested any narcotics.

Harvey agreed to submit a sample of her blood for testing, and Tarrant County Medical Examiner personnel performed toxicological tests that showed the presence of Alprazolam (Xanax), Hydrocodone, and Tramadol.

Harvey testified at trial that on the day prior to her arrest, she underwent an MRI for back pain. Harvey introduced into evidence hospital records from her hospital visit. She testified that she took Xanax before her testing to ameliorate the anxiety of undergoing an MRI scan that morning. The doctors gave her Tramadol for her pain and released her from the hospital later that afternoon with instructions to not drive for at least ten to twelve hours. The doctors also wrote her a prescription for Tramadol and Hydrocodone. The following afternoon, Harvey drove to the CVS in Azle to obtain the prescription medication prescribed to her the previous day. Harvey said that she took one of each of her prescription medications before leaving the CVS parking lot and that she ran out of gas just after she left the parking lot. She said that the officer stopped her between ten and twenty minutes after she took the medications.

### III. Admission of Expert Testimony

In her first point, Harvey complains that the trial court abused its discretion by admitting expert testimony that the amount of medication in her bloodstream would have been higher when Officer Berrettini stopped her than at the time of her blood test. She contends that this "extrapolation" testimony was inadmissible because it was not individualized to her.

Dr. Robert Johnson, chief toxicologist at the Tarrant County Medical Examiner's Office, testified about the side effects that the drugs found in Harvey's system generally have on an individual and on that individual's ability to drive. Although defense counsel objected to his testimony several times, it appears that the testimony of which Harvey complains on appeal is Dr. Johnson's testimony that the amount of Xanax, Hydrocodone, and Tramadol in her system would have been "a little bit" higher at the time of her driving than at the time of the blood draw two hours later. But Dr. Johnson did not testify as to the specific amount of drugs in Harvey's system at the time of driving. In fact, he explained that, unlike with alcohol where a person's blood alcohol concentration (BAC) at the time of driving can be calculated based on results of a BAC test taken some time later, the level of drugs in Harvey's system at the time of her driving cannot be known.

Even if the trial court abused its discretion by admitting the complained-of testimony, the record does not demonstrate that Harvey was harmed by the admission of this evidence. Generally, the erroneous admission of evidence is

4

nonconstitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See* Tex. R. App. P. 44.2(b); *Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex. Crim. App. 2003); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Owens v. State*, 135 S.W.3d 302, 310 (Tex. App.—Houston [14th Dist] 2004, no pet.) (holding that the trial court's erroneous admission of retrograde extrapolation evidence did not rise to the level of constitutional error).

Applying rule 44.2(b), we disregard any error if it did not affect Harvey's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also

consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, the State presented other significant evidence of Harvey's intoxication at the time of driving. *See Douthitt v. State*, 127 S.W.3d 327, 338 (Tex. App.—Austin 2004, no pet.) (holding appellant was not harmed by improper admission of retrograde extrapolation testimony that was cumulative of other significant evidence of intoxication). This other evidence of Harvey's intoxication includes: (1) the testimony of Harvey's poor driving, including swerving into oncoming traffic and stopping partially in an intersection, (2) the videotape of her talking to the officers after being stopped and performing the field sobriety tests, (3) the officers' observations of Harvey having trouble standing or walking without swaying or falling and Officer Berrettini's opinion that Harvey was not in control of her mental and physical faculties, (4) the results of the blood test administered relatively soon after the arrest, and (5) Harvey's own testimony admitting to taking the prescription drugs before driving. Dr. Johnson also testified without objection that Xanax's most common side effects are drowsiness, dizziness, and confusion and that Hydrocodone's and Tramadol's most common side effect is drowsiness. The State did not emphasize Dr. Johnson's status as an expert nor subscribe special credibility to his testimony.

We conclude that, in the context of the entire case against Harvey, any error in admitting Dr. Johnson's testimony did not have a substantial or injurious

6

effect on the jury's verdict and did not affect Harvey's substantial rights. *See King*, 953 S.W.2d at 271. Thus, even assuming error, we disregard it. *See* Tex. R. App. P. 44.2(b). We overrule Harvey's first point.

### IV. COMMENT ON POST-ARREST SILENCE

In her second and third points, Harvey contends that the State's direct examination of Officer Berrettini violated her right as an accused to be free from compelled self-incrimination under both the United States and Texas constitutions.

The federal constitution's guarantee of due process prohibits comment on an accused's post-arrest silence after *Miranda* warnings are given. *Doyle v. Ohio*, 426 U.S. 610, 617–20, 96 S. Ct. 2240, 2244–45 (1976); *see Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S. Ct. 1309, 1311–12 (1982). The Texas constitution provides additional protection and prohibits comment on a person's post-arrest silence both before and after *Miranda* warnings are given. *Sanchez v. State*, 707 S.W.2d 575, 579–80 (Tex. Crim. App. 1986); *see* Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005).

Here, Harvey contends that the State commented on her post-arrest silence when asking Officer Berrettini, "During your interaction with the defendant, did she ever tell you that she had any injuries?" and "Did she ever tell you that she had been to the doctor or the hospital the day before?" Officer Berrettini answered both questions in the negative.

7

During opening statements, defense counsel argued that Harvey had told the officers that she was in pain and had prescription medications in her car but that the officers did not "care." And when questioning Officer Kidd before Officer Berrettini testified, defense counsel asked if the officer remembered Harvey telling him about her back injury. When a party introduces matters into evidence, he invites the other side to reply. *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976). Based on Harvey's opening statement and questioning of Officer Kidd, Harvey opened the door to the State inquiring of Officer Berrettini whether Harvey had informed him of her back injury and hospital visit. *See id.*; *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (concluding that defense opening statement opened door to admission of extraneous offense evidence to rebut defensive theory presented in defense opening); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.) ("[B]y trying to shore up his defense strategy through questions about his post-arrest statements to the police, Bell 'opened the door' to the admission of his post-arrest silence."). We hold that the trial court did not abuse its discretion by overruling Harvey's objections, and we overrule her second and third points.

## V. CONCLUSION

Having overruled Harvey's three points, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

8

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 22, 2014