**Affirmed and Opinion Filed July 21, 2015.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00672-CR

**ANDREW CLARENCE DAVIS, III, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1312582-S**

## MEMORANDUM OPINION
Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Andrew Clarence Davis, III, appeals the trial court's judgment convicting him of manslaughter. The jury found Davis guilty, that he used a deadly weapon, and assessed his punishment at sixteen years of imprisonment and a $10,000 fine. In his sole issue on appeal, Davis argues the trial court erred in excluding the testimony of his expert witness and that he was harmed by the constitutional error. Assuming, without deciding, the trial court erred when it excluded the testimony of Davis's expert witness, we conclude that the alleged error was not constitutional error and Davis has not shown he was harmed by the non-constitutional error. The trial court's judgment is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 6, 2013, while on Interstate Highway 35, Davis drove his black sedan erratically and at a high rate of speed, hitting the driver's side door of Miguel Herrera's

pickup truck. The impact caused the truck to turn sideways. Then, both vehicles hit the guardrail, causing the front ends of both vehicles to jump up on top of the guardrail. The vehicles continued to slide down the guardrail until the truck suddenly went about ten feet in the air, going over the guardrail. When the truck landed on the other side of the guardrail, it bounced up, rotated slightly toward the driver's side, and struck a large utility pole. Meanwhile, the sedan went back into oncoming traffic and stopped. When the paramedics arrived, they pronounced Herrera dead. Witnesses to the accident saw Davis leave his vehicle and walk around. The paramedics assessed Davis's condition, determined he was "in his right mind," and did not give him medical treatment or transport him to the hospital.

Officer Randall Zabojnik responded to the accident and made contact with Davis. As a result of speaking with and observing Davis, Officer Zabojnik believed that Davis was intoxicated. After administering some of the field sobriety tests, which supported his initial observation that Davis was intoxicated, Davis refused to do further field sobriety tests due to Davis's claims of injury and a medical condition. Officer Zabojnik arrested Davis and transported him to the hospital, where a sample of Davis's blood was obtained.

Davis was indicted for manslaughter. The indictment alleged that Davis recklessly caused Herrera's death by:

> failing to keep a safe distance between said motor vehicle being operated by [Davis] and the motor vehicle occupied by [Herrera], and by failing to maintain control of said motor vehicle, and by operating the said motor vehicle at a speed greater than is reasonable and prudent under the circumstances then existing, and by operating a motor vehicle while intoxicated and under the influence of alcohol whereby colliding said motor vehicle operated by [Davis] into the motor vehicle occupied by [Herrera] which caused said vehicle to collide into and against a guardrail and a post, thereby causing the death of [Herrera.]

During the jury trial, but outside the presence of the jury, Davis offered the expert testimony of John Thomas Castle, Ph.D. The trial court excluded the expert. In Davis's offer of proof as to his expert's testimony, he showed the expert, Dr. Castle, intended to testify that the

–2–

methodology used by the phlebotomist and blood-alcohol analysis could have contaminated the blood sample, causing fermentation and an elevated blood-alcohol level. *See* TEX. R. EVID. 103(a)(2). Specifically, the expert intended to testify that the phlebotomist's failure to sanitize, clean, or sterilize the top of the blood vial and the fact that the second blood-alcohol analyst "opened" the vial, could have contaminated the blood sample. However, Dr. Castle admitted he did not test the blood sample for contamination, explaining that, at this point, an analysis would lead to inaccurate results. The trial court concluded that without the expert testing the blood sample, the expert's opinion amounted to speculation.

The jury found Davis guilty of manslaughter and that he used a deadly weapon. Also, the jury assessed his punishment at sixteen years of imprisonment and a $10,000 fine.

## II. EXCLUSION OF EXPERT WITNESS

In issue one, Davis argues the trial court erred in excluding the testimony of his expert witness and that he was harmed by the constitutional error. The State alleged he was reckless by operating a vehicle while intoxicated. Davis's defensive theory was that the State's evidence regarding intoxication was not credible because, according to his expert witness, the test results of Davis's blood sample could be inaccurate. As a result, Davis contends that the error in excluding his expert witness was constitutional error. Davis claims that he suffered harm because if the jury had heard his expert's testimony, the jury might have entertained a reasonable doubt as to his guilt for manslaughter, finding him guilty of the lesser included offense of criminally negligent homicide instead. The State does not address harm in its brief on appeal.

### A. Applicable Law

In a criminal case, harm is evaluated under Texas Rules of Appellate Procedure 44.2. Constitutional error is analyzed under Rule 44.2(a), while non-constitutional error is analyzed under rule 44.2(b). TEX. R. APP. P. 44.2.

### 1. Constitutional Error

Pursuant to rule 44.2(a), "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction." TEX. R. APP. P. 44.2(a). The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under rule 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Tillman v. State*, 376 S.W.3d 188, 198 (Tex. App.—Houston [14th Dist.] 2012, no pet.). However, the improper exclusion of evidence may raise a constitutional violation in two circumstances: (1) when an evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes evidence that is vital to the case, and the exclusion precludes the defendant from presenting a defense. *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005); *Tillman*, 376 S.W.3d at 198.

Erroneous evidentiary rulings rarely rise to the level of denying a fundamental constitutional right to present a meaningful defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002); *Tillman*, 376 S.W.3d at 198. A constitutional violation arises only where the trial court's clearly erroneous ruling excludes otherwise relevant, reliable evidence forming such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *See Walters*, 247 S.W.3d at 221; *Ray*, 178 S.W.3d at 835; *Wiley*, 74 S.W.3d at 405; *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 664 (Tex. App.—Dallas 2009, no pet.); *Tillman*, 376 S.W.3d at 198. If the erroneous ruling rises to the level of a constitutional violation, and "there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not

harmless beyond a reasonable doubt." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *Cuadros-Fernandez*, 316 S.W.3d at 662. The fact that the properly admitted evidence is sufficient to support the verdict does not demonstrate that the error was harmless. *Cuadros-Fernandez*, 316 S.W.3d at 662. However, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook*, 29 S.W.3d at 119; *see also Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Where the excluded evidence would only further the defendant's defensive theory incrementally, the error is not of a constitutional dimension. *Walters*, 247 S.W.3d at 222; *Ray*, 178 S.W.3d at 836.

## 2. Non-Constitutional Error

Pursuant to rule 44.2(b), "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). If the error did not influence the jury or had but a slight effect, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should examine the record as a whole when conducting a harm analysis. *Motilla*, 78 S.W.3d at 358. In conducting the harm analysis, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire, if material to the appellant's claim. *Motilla*, 78 S.W.3d 355–56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In assessing harm, the factors to be considered are the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *Motilla*, 78

S.W.3d 355; *Morales*, 32 S.W.3d at 867. Also, an appellate court should consider overwhelming evidence of guilt, but it is only one factor in the harm analysis. *Motilla*, 78 S.W.3d 357.

### B. Application of the Law to the Facts

Assuming, without deciding, the trial court erred when it excluded Davis's expert witness, we review the alleged error for harm. As an initial matter, we must decide whether the trial court's alleged error in excluding Davis's expert witness was, as Davis argues in his brief on appeal, of constitutional proportions because "the expert opinion . . . indicating that the test[] results from [Davis's] blood sample could be inaccurate clearly formed a vital portion of the defense['s] case that the exclusion of such evidence effectively precluded [Davis] from presenting his defensive theory."

In his brief on appeal, Davis admits that "During [the] cross-examination of Officer Zabojnik, counsel impeached the credibility of the officer's opinion that [Davis] was intoxicated with evidence of variable explanations for [Davis's] poor performance on the field sobriety tests . . ." Further, Davis was able to cross examine the police officer who initially determined that Davis was intoxicated, the phlebotomist who drew his blood, and the second blood-alcohol analyst to challenge their reliability and methodology, including the possible contamination of his blood sample. We conclude that the excluded evidence would have furthered Davis's defensive theory only incrementally. *See Walters*, 247 S.W.3d at 222; *Ray*, 178 S.W.3d at 836. Also, we conclude Davis was not effectively prevented from presenting his defense when the trial court excluded his expert witness. *See Tillman*, 376 S.W.3d at 198–99 (because appellant was able to challenge reliability of police identification procedures through cross-examination of eyewitnesses and officer, and attacked their reliability during closing argument, he was not effectively prevented from presenting defense when trial court excluded eyewitness-identification testimony of proffered expert, a psychologist); *cf. Cuadros-Fernandez*, 316 S.W.3d

at 664–65 (exclusion of expert who was primary witness and only expert presented by defense who had knowledge regarding specific type of cabinet that was alleged to be cause of death and State argued, during its rebuttal closing argument, defendant failed to call any expert witnesses was harmful constitutional error). Finally, assuming, without deciding, the trial court erred when it excluded Davis's expert, we conclude that alleged error was not of constitutional dimension and the harm analysis should be governed by rule 44.2(b). *See Tillman*, 376 S.W.3d at 199.

Next, assuming, without deciding, the trial court erred when it excluded Davis's expert, we consider whether that alleged non-constitutional error harmed Davis. First, we examine the evidence admitted for the jury's consideration. The record shows three eyewitnesses to the accident testified that Davis was driving erratically at a high rate of speed and lost control of his vehicle when he struck Herrera's truck. These witnesses also stated that Davis left his vehicle, walked around, and appeared to be uninjured. The paramedic testified that he asked Davis questions. Davis was able to answer the questions correctly so he concluded Davis was "in his right mind," and he did not medically treat Davis or transport Davis to the hospital. Also, Davis introduced the paramedic's patient care record, which was admitted into evidence. On that form, next to the section labeled "Alcohol/Drugs" the paramedic wrote "None."

Officer Randall Zabojnik responded to the accident and made contact with Davis, who repeatedly asked the officer about the damage to his vehicle. While speaking with Davis, Officer Zabojnik detected the odor of alcohol and observed that Davis had bloodshot and watery eyes, an "unsteady balance," and slurred speech. Based on these observations, Officer Zabojnik administered the HGN test to Davis and observed all six clues. Also, Officer Zabojnik observed that Davis had difficulty following directions, would not keep his head still, and could not keep his balance in the starting position for the walk-and-turn test. Officer Zabojnik did not observe that Davis had any injuries and watched him walk to the side of the road and down a slope

without difficulty. However, Davis refused to do further field sobriety tests due to his claims of injury and a medical condition. Officer Zabojnik arrested Davis and transported him to the hospital, where a sample of Davis's blood was obtained. As previously noted, Davis cross-examined Officer Zabojnik as to the reliability of his conclusion that Davis was intoxicated. Further, the video recording from the officer's "dash camera" of the events was admitted into evidence and played for the jury.

Officer Allen Hollis, the crash investigator, testified the cause of the crash was both excessive speed and faulty evasive action by Davis, the driver of the sedan. Also, Officer Craig Barnhart, the accident reconstructionist, testified he retrieved the data from the "black boxes" or the "event data recorders" of Davis's and Herrera's vehicles. He testified the data reflected the speeds Davis was traveling prior to the collision: 89 mph five seconds before; 86 mph four seconds before, 85 mph three second before; 76 mph two seconds before; and 65 mph one second before. Also, Officer Barnhart stated the data from Herrera's "event data recorder" showed that five seconds prior to the collision, he was traveling "60 miles an hour, except for one-half second prior to the impact, which is 61. And then at 0.0, at time zero, it was also 61."

The phlebotomist testified as to the procedure she used in drawing Davis's blood at the hospital. Also, the blood-alcohol analyst testified that based on her analysis of Davis's blood sample, Davis had a blood alcohol concentration of 0.19. The blood-alcohol analyst stated that she was aware of an earlier analysis performed by a different analyst that was "no longer with her office." That analysis found Davis had a blood alcohol concentration of 0.18. The blood-alcohol analyst explained the differences in their results was a "different reporting language," i.e., the first blood-alcohol analyst reported the lowest value and the second, testifying blood-alcohol analyst reported the average value of the results. As noted above, Davis had the

opportunity to cross examine both the phlebotomist and the blood-alcohol analyst as to their methodology in drawing Davis's blood and analyzing the blood sample.

Second, we review the trial court's instructions to the jury. Specifically, we note that the jury charge stated, in part:

> A person acts recklessly or is reckless with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

> Now, considering all the law contained in the Court's charge, if you believe from the evidence beyond a reasonable doubt that [] Davis on or about the 6th day of July, A.D., 2013, in the County of Dallas and said State, did unlawfully then and there recklessly cause the death of an individual, [] Herrera, . . . by failing to keep a safe distance between said motor vehicle being operated by [Davis] and the motor vehicle occupied by [Herrera], or by failing to maintain control of said motor vehicle, or by operating the said motor vehicle at a speed greater than is reasonable and prudent under the circumstances then existing, or by operating a motor vehicle while intoxicated and under the influence of alcohol whereby colliding said motor vehicle operated by [Davis] into the motor vehicle occupied by [Herrera] which caused said vehicle to collide into or against a guardrail or a post, thereby causing the death of [Herrera], and you find that a deadly weapon, to-wit: a motor vehicle, was used or exhibited during the commission of the aforesaid offense, then you will find [Davis] guilty of the offense of manslaughter, and say by your verdict, guilty.

The indictment and jury charge alleged four ways in which Davis acted recklessly. Whether Davis was intoxicated is implicated in only one of the four allegations. In this case, the jury's general verdict of guilty for the offense of manslaughter makes it impossible to determine which theory the jury relied upon. However, while relevant, this fact alone is not determinative. *See Owens v. State*, 135 S.W.3d 302, 311 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Third, we review the State's and Davis's defensive theories and the closing arguments of counsel. Davis's defensive theory was that he was not intoxicated and his counsel focused his closing argument on that particular allegation of reckless conduct. Conversely, in the State's

closing argument, it focused on the different allegations of conduct by which the jury could find Davis reckless:

> Remember the different reasons for recklessness. We talked about that in jury selection. Y'all just have to agree that he was reckless. You don't have to agree why he was reckless. You four can believe [he] was reckless because of excessive speed, that 89 miles per hour. You four can believe in a failure to maintain safe distance. You four can believe that he was intoxicated and that's why he was reckless.

> At the end of the day, he was reckless.

> Remember, all the civilian testimony. The erratic driving, and then the officer. . . . All the clues of intoxication out on the scene. That video that y'all saw, that's evidence of intoxication. And then the blood evidence .18, .19.

After reviewing the evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, the defense's theory, and the parties' closing arguments, we conclude that assuming, without deciding, the trial court erred when it excluded Davis's expert, that non-constitutional error was harmless.[1]

Issue one is decided against Davis.

### III. CONCLUSION

Assuming, without deciding, the trial court erred when it excluded the testimony of Davis's expert witness, the alleged error was not constitutional error and Davis has not shown he was harmed by the non-constitutional error.

---

[1] Even if we employed the more stringent harm analysis required by rule 44.2(a), we conclude the result would be the same. A case with constitutional error must be reversed unless the reviewing court determines beyond a reasonable doubt the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). The presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless constitutional error under rule 44.2(a). *See Tillman*, 376 S.W.3d at 202. Having evaluated the entire record in a neutral light, we conclude that a rational trier of fact would not have reached a different result if the error had not occurred and Dr. Castle had been allowed to testify. *See Tillman*, 376 S.W.3d at 202.

The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140672F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDREW CLARENCE DAVIS, III,
Appellant

No. 05-14-00672-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1312582-S.
Opinion delivered by Justice Lang. Justices
Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of July, 2015.