

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00032-CR
### NO. 02-17-00033-CR

JAMES RAY GOBER                                                                  APPELLANT

V.

THE STATE OF TEXAS                                                                     STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NOS. 1448909D, 1448913D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant James Ray Gober appeals his convictions for two counts of aggravated assault with a deadly weapon, for which he was sentenced to twenty years' confinement. In two issues, Gober argues that the trial court abused its

----

[1]*See* Tex. R. App. P. 47.4.

discretion when it admitted evidence of retrograde extrapolation of his blood-alcohol content and when it denied his motion for continuance.  We will affirm.

## II. Factual Background

On March 15, 2016, Gober was driving an eighteen-wheeler tanker truck when he attempted a wide turn while going too fast, jumped a curb, and hit the right front tire and fender of a Honda Accord driven by Jose Alfaro.[2]  After Alfaro and his passenger, Abigail Maradiaga, exited their vehicle, Alfaro called 911.  While they waited on the police, Maradiaga believed that Gober acted oddly and was "under the influence of something."

Approximately thirty minutes later while they were still waiting for the police to arrive, Gober started the engine of the tanker truck.  Alfaro believed that Gober was attempting to leave the scene, so Alfaro called 911 again.  Gober drove the tanker truck toward the Accord.  Alfaro and Maradiaga, who were standing behind the Accord, had to move out of the way to avoid being hit by the Accord as Gober used the tanker truck to push the Accord.  Gober pushed the Accord approximately 200 to 300 feet and, in the process, ripped off the fender.

After a friend informed Odir Jayme that Maradiaga, his daughter, had been involved in an accident three or four blocks from his business, Jayme went to the scene.  Jayme arrived as the tanker truck was pushing the Accord, and he told

---

[2]The State made it clear to the jury that Gober was not charged with any crime for this initial accident:  "Let's be clear, we're not here because of that initial wreck.  We're here because of his conduct after the wreck."

2

Maradiaga and Alfaro to move out of the way. When Gober kept on driving after moving the Accord out of the way, Jayme followed Gober to obtain his license plate number.

Jayme noted that Gober ran a red light and kept going until he hit an ambulance. After hitting the ambulance the first time, Gober stopped, and Jayme exited his vehicle and went to the driver's side of the tanker truck to grab the keys. But then Gober continued driving, striking the ambulance two more times while pushing it out of the way. Gober "almost smashed" Jayme between the ambulance and the mirror on the tanker truck as the tanker truck "popped the curb" and ended up on the passenger side of the ambulance. Jayme jumped off the tanker truck and went around to the passenger side where he grabbed the keys and turned off the engine. Jayme believed that Gober was drunk based on the way that he looked and smelled.

The paramedics exited the ambulance, and one of the paramedics went to check on Gober. The paramedic ran various tests, including an electrocardiogram because Gober said that he had undergone open heart surgery three months prior, and all of the tests came back within normal limits. Gober did not complain of any pain; he appeared only dazed. While he was evaluating Gober, the paramedic noticed the smell of alcohol.

When the police arrived, they ran a computer check on Gober's driver's license to see if there were any active warrants. Although Gober's physical license contained a commercial vehicle endorsement, the DPS records revealed

3

that the endorsement had been removed.[3]  Officer Joel did not smell alcohol on Gober.  Based on the totality of the circumstances—including Gober's ramming the tanker truck into the Accord in order to flee the scene of the initial accident, running the red light, and deliberately hitting the ambulance more than once—the police charged him with aggravated assault of a public servant (the driver of the ambulance) and with aggravated assault with a deadly weapon (for ramming the Accord while Alfaro was standing behind it).

Following the investigation of the collisions, Gober was taken to the hospital.  The records relating to his hospital stay were admitted into evidence.

Dr. Robert Johnson, the chief toxicologist with the Tarrant County Medical Examiner's Office, testified at trial that the hospital tested Gober's blood approximately two hours after the accident and found 227 milligrams per deciliter of ethyl alcohol.  Dr. Johnson explained that to convert the hospital's result—which was obtained by testing the water portion at the top of Gober's blood sample that had been centrifuged—to a result for a whole blood sample—one that had not been centrifuged and could be compared to the legal limit in a driving case—fourteen percent is subtracted.  In this case, the calculation produced a blood-alcohol concentration of .195 grams per 100 milliliters.  On cross-examination, Dr. Johnson testified that he did not have enough information to extrapolate the blood-alcohol results to tell what Gober's blood-alcohol

_____

[3]Officer Linuel Joel explained at trial that the endorsement can be removed if someone has not been medically cleared to be a commercial driver.

4

concentration was at 5:30 p.m. when the accident occurred. On redirect, the State posed a hypothetical, which included Gober having a full stomach at 5:30 p.m., and Dr. Johnson testified that under that scenario, Gober's blood-alcohol concentration at 7:20 p.m. would have been going down and that "it would have been lower than the peak." On recross-examination, Dr. Johnson agreed that he was not telling the jury that Gober's blood-alcohol concentration had gone up or had gone down at 7:20 p.m. because he did not have that information.

After hearing the evidence set forth above, the jury found Gober guilty of two counts of aggravated assault with a deadly weapon. Gober then perfected this appeal.

### III. RETROGRADE EXTRAPOLATION TESTIMONY WAS NOT HARMFUL

In his first issue, Gober argues that the trial court abused its discretion when it allowed evidence of retrograde extrapolation of his blood-alcohol content. Gober argues that despite the State's toxicology expert testifying that he did not have enough facts to extrapolate the blood-test results contained in the hospital records, the State improperly extrapolated Gober's blood-alcohol results by telling the jury that he was intoxicated at the time of the incident.[4]

Assuming without deciding that the trial court erred by admitting the retrograde extrapolation testimony, we address whether such error is harmless.

---

[4]Gober does not challenge the admission of the retrograde extrapolation evidence on any other grounds and does not challenge the admission of other intoxication evidence.

5

*See* Tex. R. App. P. 44.2(b); *Owens v. State*, 135 S.W.3d 302, 310 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that trial court's erroneous admission of retrograde extrapolation evidence did not rise to the level of constitutional error). Under rule 44.2(b), we review nonconstitutional error to determine whether the error affected the substantial rights of Gober. *See* Tex. R. App. P. 44.2(b). If it did not, we disregard it. *See id.* A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

At the outset of our harm analysis we note that whether Gober was intoxicated at the time he committed the offenses is not an element that the State

had to prove or that the jury had to decide to arrive at their guilty verdicts, and thus any error in admitting evidence of intoxication did not prejudice the jury's decision-making process. *See* Tex. Penal Code Ann. § 22.01(a)(2) (West Supp. 2017) (setting forth elements of assault), § 22.02(a)(2) (West 2011) (setting forth elements of aggravated assault); *cf. Cummings v. State*, No. 12-16-00122-CR, 2017 WL 1426796, at *2 (Tex. App.—Tyler Apr. 19, 2017, no pet.) (mem. op., not designated for publication) (stating that because venue was not an element of the offense, any error in failing to prove venue did not prejudice the jury's decision-making process).

The record demonstrates that the State did not mention retrograde extrapolation during voir dire or in its opening statement. Out of the twenty-three pages that contain Dr. Johnson's trial testimony, Gober questioned Dr. Johnson about extrapolation and absorption for approximately three pages, and the State spent the same number of pages questioning Dr. Johnson about that topic on redirect examination. The jury also had before it Gober's medical records, which included the blood-test results and set forth a final diagnosis of alcohol abuse. During closing argument, the prosecutor mentioned several times without objection that Gober had been drinking and was intoxicated at the time of the collisions and then referred the jurors to the medical records for evidence of Gober's blood-alcohol level; only once did the prosecutor touch on retrograde extrapolation. The charge did not mention retrograde extrapolation.

7

Gober argues that "[w]ithout the extrapolation evidence[,] there was a high probability that the jury would have been deciding whether the accident was a result of [his] medical condition or his fear of being found to be driving with an invalid CDL license." But during closing argument, Gober's counsel conceded that Gober had been drinking and did not suggest that his behavior in intentionally hitting two different vehicles multiple times was due to any medical condition.

Our review of the record reveals that there is no indication that the jurors were predisposed to give Dr. Johnson's brief testimony about retrograde extrapolation greater weight than the other evidence of Gober's intoxication—including Gober's medical records and testimony from Maradiaga, Jayme, and the paramedic—that was before them. We conclude that, in the context of the entire case against Gober, any error in admitting the retrograde extrapolation testimony did not have a substantial or injurious effect on the jury's verdict and did not affect Gober's substantial rights. *See King*, 953 S.W.2d at 271; *Douthitt v. State*, 127 S.W.3d 327, 338 (Tex. App.—Austin 2004, no pet.) (holding appellant was not harmed by improper admission of retrograde extrapolation testimony that was cumulative of other significant evidence of intoxication). Thus, even assuming error, we disregard it. *See* Tex. R. App. P. 44.2(b). We overrule Gober's first issue.

## IV. ORAL MOTION FOR CONTINUANCE PRESERVED NOTHING FOR REVIEW

In his second issue, Gober argues that the trial court abused its discretion by denying his motion for continuance. After a jury had been empaneled and sworn but prior to opening statements, Gober's counsel orally moved for a continuance, requesting additional time for an expert to review Gober's medical records that the State had released to the defense five days prior but which Gober's counsel had not noticed until the day before he requested the continuance.

The code of criminal procedure provides, "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion. A continuance may be only for as long as is necessary." Tex. Code Crim. Proc. Ann. art. 29.03 (West 2006). "A motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000); *Ricketts v. State*, 89 S.W.3d 312, 317 (Tex. App.—Fort Worth 2002, pets. ref'd); *see also Anderson v. State*, 301 S.W.3d 276, 278–81 (Tex. Crim. App. 2009) (holding that court of appeals erred by applying a due-process exception to the motion-for-continuance preservation requirement and concluding that the "right to present a defense is subject to forfeiture").

Similarly, article 29.13 of the code of criminal procedure provides,

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

Tex. Code Crim. Proc. Ann. art. 29.13 (West 2006). But this provision does not address or remove the requirement that a motion for continuance must be in writing. *See id.* The court of criminal appeals and our court have both applied the in-writing requirement to motions for continuance filed during a trial. *See Dewberry*, 4 S.W.3d at 755–56; *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995); *Woodall v. State*, 77 S.W.3d 388, 401 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also* Tex. Code Crim. Proc. Ann. art. 29.08 (West 2006) (stating that "*[a]ll* motions for continuance must be sworn to") (emphasis added).

Gober's motion for continuance, which was oral and unsworn, preserved nothing for our review. *See* Tex. Code Crim. Proc. Ann. arts. 29.03, 29.08; *Anderson*, 301 S.W.3d at 281; *Dewberry*, 4 S.W.3d at 756; *Matamoros*, 901 S.W.2d at 478. Accordingly, we overrule Gober's second issue.

## V. CONCLUSION

Having overruled Gober's two issues, we affirm the trial court's judgments.

/s/ Sue Walker
SUE WALKER
JUSTICE

10

PANEL:  WALKER, MEIER, and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 8, 2018

11